IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| TERRASPAN, LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:12-CV-0816-K |
| | § | |
| RAVE, LLC, | § | |
| | § | |
| Defendant. | § | |

### Memorandum Opinion and Order

Before the Court is Defendant Rave, LLC's ("Rave") Motion to Dismiss Pursuant to Rules 12B(3) and 12(b)(6) of the Federal Rules of Civil Procedure. The Court has considered the motion, the parties' briefs, and the applicable law. The Court **HOLDS** that venue is improper as to Count I and Terraspan, LLC's (Terraspan) claims related to the "nm 4 3" and "Probe 4 3" works in Count II. The Court **HOLDS** that the Terraspan has failed to state a claim upon which relief can be granted as to all remaining claims in Count II. Count I and Terraspan's claims related to the "nm 4 3" and "Probe 4 3" works in Count II are transferred to the District Court for the Northern District of California, San Francisco Division, pursuant to Title 28 U.S.C. § 1406. Terraspan's remaining claims in Count II are **DISMISSED** without prejudice.

## I.    FACTUAL BACKGROUND

Rave is a company in the business of manufacturing and selling devices for the repair of semiconductor masks and the repair and testing of semiconductor wafers. Rave's products use advanced technologies that allow its customers to visualize and correct microscopic imperfections in semiconductor masks and wafers.

Rave is a limited liability company founded by Barry Hopkins, General Nanotechnology ("GN"), and Technical Instruments San Francisco ("TISF").  Several different Operating Agreements, starting in 1996, required each founder to make contributions to Rave in exchange for equity in Rave.  Rave executed five separate Operating Agreements dated December 31, 1996 ("1996 Agreement"), August 31, 1997 ("1997 Agreement"), June 1, 2000 ("2000 Agreement"), December 3, 2003 ("2003 Agreement"), collectively referred to herein as the "Rave Operating Agreements" to govern the formation and operation of Rave.  At the time of Rave's founding, Victor Kley was CEO of GN.  Victor Kley is also a named inventor in the patents underlying the patent infringement claims in this case.

Several portions of the Rave Operating Agreements are relevant to this case.  In particular, the 1996 Agreement required each initial member of Rave to "[assign] to the Company, for the term of the Company's Existence, an exclusive, worldwide license to all Rave Technology which such Member owns or hereafter acquires or develops during the Company's term."  The 1996 Agreement also broadly defined the meaning of "Rave

Technology."  Rave Technology was defined as meaning:

> All concepts, inventions, patents, patent applications (including continuations and amendments of any description), trademarks, know-how and all other intellectual property rights of any nature, whether or not proprietary, to the extent that the same relate to semiconductor mask repair, wafer repair, or wafer electrical test, together with such other activities as are unanimously approved by the founders.

The 1996 Agreement also contained a forum selection clause that provided, in part, that:

> Each Member hereby consents to the exclusive jurisdiction of the state and federal courts sitting in California in any action on a claim arising out of, under or in connection with this Agreement or the transactions contemplated by this Agreement and agrees that proper venue is the City of San Francisco.

The 1996 Agreement also contained a clause that said that to the extent that a party's interest was transferable, "this Agreement will be binding upon and inure to the benefit of the Members, and their respective successors and assigns."

The 1997 Agreement contained identical provisions requiring licensing of Rave Technology, defining Rave Technology, providing for exclusive venue in San Francisco, and binding the parties' successors and assigns.

The 2000, 2003, and 2008 Agreements also contained the same identical provisions requiring licensing of Rave Technology, providing for exclusive venue in San Francisco, and binding the parties' successors and assigns.  The 2000, 2003, and 2008 Agreements contained a nearly identical definition of Rave Technology.  The 2000 Agreement included a new provision whereby GN retained its rights in certain narrow

3

areas.  These narrow areas were labeled as "Reserve Areas" and the 2000 Agreement defined the Reserved Areas as "diamonds, conductive diamonds, carbon nitride coating on silicon, silicon tips for AFM/STM probes, force sensors, nanostorage devices, microscopes and all imaging and visualization software and hardware.

In addition to the Rave Operating Agreements, GN and Rave signed a Software License Agreement, dated September 30, 1999 ("Software Agreement").  Under the Software Agreement, GN granted Rave a non-exclusive, worldwide license to use reproduce and sell one copy of the Software with each Mask Repair tool manufactured and sold by Rave.  The Software Agreement also allowed Rave to modify the software source code and to develop its own independent products.  The Software Agreement contained a forum selection clause that provides, in part, "The parties intend that all disputes hereunder be resolved exclusively by the California Courts."  Finally, the Software Agreement provided that to the extent that the rights of the parties were assignable, the Software Agreement "shall be binding upon and inure to the benefit of the successors and assigns of the parties hereto."

GN wrote several letters to Rave from 2009 to 2011.  In these letters GN claimed that Rave was in breach of various software and patent license agreements between GN and Rave, and through those letters GN notified Rave that GN was terminating all agreements with Rave.  Subsequently, GN assigned the asserted patents in this case to Terraspan.  Terraspan brought this patent and copyright infringement case alleging that

4

Rave is infringing on patents which are included in the "Reserved Areas" for which Rave does not have a license.

## II.    Rave's Motion to Dismiss for Improper Venue

Rave moves to dismiss under Fed. R. Civ. P. 12(b)(3) contending that the Rave Operating Agreements' forum selection clauses make venue improper in Texas.  Rave contends that it has a license for the asserted patents based on the Rave Operating Agreements.  Rave argues that the forum selection clause in the Rave Operating Agreements applies to Terraspan's claims because the resolution of the claims involves interpreting the Rave Operating Agreements.  Terraspan contends that the forum selection clauses do not apply to its patent claims because either the Rave Operating Agreements do not apply to patent disputes or the patents are part of the Reserved Areas, Terraspand contends that the forum selection clause in the Software License Agreement does not apply because GN terminated the Software License.

### A.    Legal Standard

A district court must dismiss or, in the interest of justice, transfer a case if venue is improper where filed.  28 U.S.C. § 1406 (a) (West 2006).  A Motion to dismiss based on a forum selection clause is properly brought under Rule 12(b)(3).  *See Lim v. Offshore Specialty Fabricators, Inc.*, 404 F.3d 898, 901–02 (5th Cir. 2005).  When the court considers a motion to dismiss based on a forum selection clause, it applies the standard set out in *M/S Bremen and Unterweser Reederei, GmBH v. Zapata Off-Shore Co.*, 407 U.S.

5

1 (1972).  Forum selection clauses "are prima facie valid and should be enforced unless

enforcement is shown by the resting party to be unreasonable under the circumstances."

*Id.* at 10.      The party seeking to escape his contract must show that trial in the

contractual forum will be so gravely difficult and inconvenient that he will for all

practical purposes be deprived of his day in court.  *Id.* at 17.  Terraspan makes no

showing that, if applicable, the forum selection clauses are unreasonable.

### B.    Applicability of the Forum Selection Clause to Terraspan's Claims

Terraspan's sole contention is that the forum selection clauses are not applicable

to its claims against Rave.  The Court must examine the language of the contract to

determine which causes of action are governed by the forum selection clause.

*Marinechance Shipping, Ltd. V. Sebastian*, 143 F.3d 216, 222 (5th Cir. 1998).  If the

substance of the plaintiff's claims, stripped of their labels, does not fall within the scope

of the forum selection clause, the clause cannot apply.  *Transfirst Holdings, Inc. v. Phillips*,

2007 U.S. Dist. Lexis 14300, at *31–2 (N.D. Tex. Mar. 1, 2007) (internal citations and

alterations omitted).  Claims that arise out of the contractual relationship and implicate

the agreement are subject to the forum selection clause.  *Aerus LLC v. Pro Team, Inc.* 2005

WL 1131093, at *7 (N.D. Tex. May 9, 2005 (quoting *Kessmann & Assoc., Inc. v. Barton-*

*Aschman Assoc., Inc.*, 10 F. Supp. 2d 682, 688 (S.D. Tex. 1997).  The question is whether

the facts and claims alleged in the complaint have a direct or indirect connection, link

or association with, or relation to the contractual relationship.  *Smith v. Lucent Techs., In.*,

2004 U.S. Dist. LEXIS 4074, at *37 (E.D. La., Mar. 16, 2004).  Where enforcement of a provision in the parties' agreements is a defense to a claim, that claim involves a right or remedy under the contract and should fall within the scope of the forum selection clause. *Aerus LLC*, 2005 WL 1131093, at *7 (quoting *Penn, L.L.C. v. New Edge Network, Inc.*, 2003 U.S. Dist. LEXIS 17664, at *7 (N.D. Ill. Oct. 1, 2003)).

In Count I, Terraspan claims that Rave is infringing on certain patents now owned by Terraspan.  One of Rave's defenses is that the license to utilize Rave Technology in the Rave Operating Agreements gives Rave a right to utilize the patents at issue in this case. Because one of Rave's defenses is enforcement of a provision in the parties' agreements, Terraspan's patent infringement claim involves a right or remedy under the contract.  Terraspan's allegations in the patent infringement claim have a direct or indirect connection, link or association with the Rave Operating Agreements.  The forum selection clause is applicable to Terraspan's patent infringement claims.

In Count II, Terraspan claims that Rave is infringing on copyrights held now owned by Terraspan.  The first two copyrighted works are computer software identified in Terraspan's complaint as "probe 4 3" and "nmSeries 4 3."  Terraspan's complaint shows that "nmSeries 4 3" is a changed version of the previously created work, "probe 4 3."  In addition to the Rave Operating Agreements, GN and Rave entered into a Software License Agreement for GN's Probe Software.  The Software License Agreement contains a forum selection clause, providing that, "all disputes hereunder be resolved

7

exclusively by the California courts."

One of Rave's defenses to claims of infringement of these works is that the Software License Agreement gives Rave a right to use, reproduce, modify, and sell the "probe 4 3" and "nmSeries 4 3" copyrighted works.  Because one of Rave's defenses is enforcement of a provision in the parties' agreements, these copyright infringement claims have a direct or indirect connection, link or association with the Software Licensing Agreement.  GN terminating its agreement at some point in the relationship does not erase the link between the copyright claims and the Software Licensing Agreement.  The forum selection clause in the Software License Agreement is applicable to Terraspan's copyright infringement claims based on its "probe 4 3" and "nmSeries 4 3" copyrighted works.

## C.  Applicability to Terraspan as a Third Party Non-Signatory

Terraspan also argues that Terraspan, as a third-party who did not sign the Rave Operating Agreements, is not bound by the forum selection clause.  Terraspan's sole basis is that GN did not have actual or apparent authority under Texas agency law to bind Terraspan.  Rave contends that the non-existence of an agency relation is not relevant because Terraspan is bound as a successor in interest of the patent rights held by GN.

A nonparty can be bound to a forum selection clause if the nonparty is closely related to the dispute, such that it becomes foreseeable that it will be bound.  *Harrison v. Procter & Gamble Co.*, 2007 WL 431085, at *2 (N.D. Tex. Feb. 8, 2007) (quoting

*Hugel v. Corp. of Lloyd's*, 999 F.2d 206, 209 (7th Cir. 1993)).  No specific relationship is dispositive of whether or not a third party will be bound by a forum selection clause. *See Excel Marketing Soluations, Inc. v. direct Financial Solutions, LLC*, 2011 WL 1833022, at *6–7 (N.D. Tex. May 13, 2011)(discussing variety of relationships where courts have found a third party bound to a forum selection clause).  The key issue is whether or not it is foreseeable that the third party will be bound.  *See id.*

Terraspan was formed to monetize the intellectual property held by GN. Terraspan's claims to the patents and copyrights in question are based solely on GN's ownership and rights as a predecessor-in-interest to Terraspan, GN negotiated a variety of rights pertaining to its intellectual property with Rave.  GN and Rave expressly included in the Rave Operating Agreements and the Software License Agreement provisions that limited the ability of either party to transfer intellectual property implicated by the Rave Operating Agreements and the Software License Agreement.  To the extent that a party could transfer its rights to another party, GN and Rave expressly agreed that the provisions of the Rave Operating Agreements and the Software License Agreement would be binding on future successors and assigns.  The express language of the contracts shows that it was foreseeable that a third-party successor to any rights of the parties would be bound by the provisions of the Rave Operating Agreements and the Software License Agreement, including the forum selection clause.  Terraspan is bound by the forum selection clause as a third party successor-in-interest to GN's rights.

9

### D.  To Dismiss or Transfer Terraspan's Claims

In light of the forum selection clause, Rave requests that the Court dismiss Count I of Terraspan's Complaint.  Rave does not request dismissal of all of Count II of Terraspan's Complaint under Rule 12(b)(3).  The decision whether to dismiss or transfer an action under § 1406 (a) is within the court's discretion in the "interest of justice." *Bonded Inspections, Inc. v. Northrop Grumman Corp.* 1998 WL 185518, at *2 (N.D. Tex. April 10, 1998) (quoting *Padel v. Carnival Corp.*, 1997 WL 732424, at 2 (E.D. La. Nov. 24, 1997).    Given this Court's holding, a proper venue for Terraspan's patent infringement claims is in the Northern District of California, San Francisco Division. The Court finds that it serves the interest of justice to transfer Terraspan's patent infringement claims because the agreement of the parties is sufficiently clear to identify another exclusive federal forum.

The forum selection clause in the Software License Agreement is different from the forum selection clause in the Rave Operating Agreements.  The language only identifies the "California Courts" as the exclusive forum for disputes which implicate the Software License Agreement.  While this is sufficient to limit the forums available to those in California, it does not identify an exclusive federal forum where the Court can transfer claims.  The Court finds it is in the interest of justice to dismiss Terraspan's copyright claims which implicate the Software License Agreement and let Terraspan choose its forum from those available in California.

III.   **Rave's Motion to Dismiss for Failure to State a Claim upon Which Relief Can Be Granted**

Rave moves to dismiss Count II of Terraspan's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).  Rave argues that Terraspan's claims are not facially plausible because Terraspan does not identify an accused product and Terraspan alleges nearly all of the substantive allegations of Count II only upon information and belief.  Terraspan argues that it need only allege, and has alleged, ownership, registration, and infringement.  The Court agrees with Rave that Count II of Terraspan's Complaint is deficient because Count II fails to state a claim upon which relief can be granted.

A.   **Legal Standard**

Rule 8(a)(2) of the Federal Rule of Civil Procedure requires a complaint to state a claim showing the plaintiff is entitled to relief.  Fed. R. Civ. P. 8(a)(2).  To do so, the factual allegations must be enough to raise a right to relief above the speculative level.  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  To meet this burden, a plaintiff must plead enough facts to state a claim to relief that is plausible on its face.  *Id.* at 570.  Dismissal of a complaint is appropriate where a party fails to state a claim upon which relief can be granted.  *See* Fed. R. Civ. P. 12 (b)(6).

When considering a Rule 12 (b)(6) motion, the Court accepts as true all facts pleaded.  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009).  Unlike well-pleaded facts, conclusions are not entitled to the presumption of truth.  *Id.*  The Court takes a two-step

approach.  First, the Court can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.  *Id.*  Second, the Court uses the remaining well-pleaded facts, and assuming their veracity, determines whether those facts plausibly give rise to an entitlement to relief.  *Id.*

The Court's analysis begins with identifying the allegations in Count II of Terraspan's Complaint that are not entitled to the assumption of truth.  Terraspan pleads that Rave "knowingly and willingly directly copied Terraspan's subject works" and did so "for the specific purposes of infringing Terraspan's copyrights, and reproducing, copying and distributing illegal unauthorized copies of the subject works."  Terraspan also pleads that Rave "knowingly and willfully created derivative works based on Terraspan's subject works," and did so "for the specific purpose of infringing Terraspan's copyrights, and selling, distributing, marketing and promising such works in violation of Terraspan's copyrights.  These bare assertions, like the pleading of conspiracy in *Twombly* and discrimination in *Iqbal,* amount to nothing more than that a formulaic recitation of the elements of a portion of a copyright infringement claim.  *See Twombly*, 550 U.S. at 555; *Iqbal*, 556 U.S. at 1951.  These conclusory assertions are not entitled to a presumption of truth.  *Iqbal*, 556 U.S. at 1950.

The Court next considers the factual allegations in Count II of Terraspan's complaint to determine if they plausibly suggest an entitlement to relief.  The complaint alleges that by assignment, Terrapsan owns the subject works.  Terraspan alleges that the

copyrights have been registered.  As to infringement, Terraspan alleges that Rave had access to the copyrighted works and that Rave provided a copyright notice to its customers, acknowledging GN's copyrights.  Taken as true, these allegations are consistent with Terraspan's claim of copyright infringement.  However, these facts alone do not plausibly establish infringement.

The Court is faced with an obvious alternative explanation for Rave's actions. Where a plaintiff's facts do not make an inference of impermissible conduct of the defendant more likely than an inference of permissible conduct, the plaintiff's right to relief is not a plausible connclusion.  *See Iqbal*, 556 U.S. at 1951; *Twombly*, 550 U.S. at 567.  At least some of Terraspan's copyrights relate to software that GN, Terraspan's own predecessor-in-interest, developed.  GN and Rave entered into a Software License Agreement giving Rave the right to use, reproduce, modify, and sell "probe 4 3" and "nmSeries 4 3" copyrighted works.  Terraspan's only facts regarding infringement are that Rave had access to the copyrighted works and acknowledged GN's copyrights to its customers.  As between the obvious alternative explanation of licensed use and the willful infringement that the plaintiff asks this court to infer occurred, infringement is not a plausible conclusion.

Even though Terraspan's case law does not address the pleading changes under *Twombly* and *Iqbal*, Terraspan's own cases still support dismissal for failure to state a claim upon which relief can be granted.  Terraspan relies on *Mid Am. Title Co. v. Kirk* for

13

the proposition that a complaint alleging ownership, proper registration, and infringement by the defendant is sufficient.  991 F.2d 417, 418 (7th Cir. 1993).  *Kirk* relied on an incorrect interpretation of the Rule 12(b)(6) standard, which the Supreme Court expressly retired in *Twombly*, 550 U.S. at 562.

The cases on which Terraspan relies all recognize that to properly plead infringement, a plaintiff must identify an accused work.  *See, e.g., Warner Bros., Inc. v. Am. Broadcasting Cos.,* 720 F.2d 213, 239 (2nd Cir. 1983).   Identifying an accused work is necessary because the inference of copying comes from comparing the similarity of the protected work and the accused work.  *See, e.g., id.*  Without identifying an accused work to compare to the copyrighted work, a pleading does not plausibly establish infringement. *See Nat. Bus. Dev. Servs., Inc. v. Am. Credit Educ. & Consulting, Inc.* 299 Fed. App'x 509, 512 (6th Cir. 2008) (holding that *Twombly* governed the plaintiff's pleading of copyright infringement claim, and the complaint cannot survive a Rule 12(b)(6) motion because the plaintiff failed to even allege which, if any, of defendants' materials were infringing).  Terraspan also has failed to identify any of Rave's works which are allegedly infringing.  Count II of Terraspan's complaint cannot survive a Rule 12(b)(6) motion.

## III.    Conclusion

Because Terraspan's patent infringement claims are subject to the forum selection clause in the Rave Operating Agreements, venue in this court is improper.  Because

14

Terraspan's copyright infringement claims related to "probe 4 3" and "nmSeries 4 3" works are subject to the forum selection clause in the Software License Agreement, venue in this court is improper.  The Court hereby transfers Count I of Terraspan's complaint to the Northern District of California, San Francisco Division.  The Court **DISMISSES** Terraspan's copyright infringement claims related to "probe 4 3" and "nmSeries 4 3" works due to improper venue.  The Court **DISMISSES** all of Terraspan's remaining claims in Count II for failure to state a claim upon which relief can be granted.

**SO ORDERED.**

Signed December  10 , 2012

_Ed Kinkeade_
ED KINKEADE
UNITED STATES DISTRICT JUDGE

15